**David NEWSON, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 49S00–9801–CR–60.

Supreme Court of Indiana.

Dec. 30, 1999.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, K.C. Norwalk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant David Newson was convicted of Murder and Carrying a Handgun Without a License. He appeals, arguing (1) that the trial court committed reversible error when it excluded certain testimony of a witness, and (2) that there was insufficient evidence to support his convictions. Finding that the testimony was, in fact, not excluded and that the evidence was sufficient, we affirm Defendant's convictions.

We have jurisdiction over this direct appeal because the longest single sentence exceeds fifty years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

## Background

The facts most favorable to the verdict show that on April 6, 1996, Leroy Cooks and Darryl Ford were standing outside some apartments. Defendant David Newson and another man drove up and exited their car. Defendant had a tattoo and was wearing a blue bandanna.

Defendant and the other man walked past Cooks and Ford, climbing a short stairway to Rosezina Chandler's apartment and knocked on her door. Chandler opened the door and told Defendant that she did not want any company. He responded, "Cool," and turned to walk away. Chandler noticed a black handgun on the side of Defendant's hip.

As Defendant and the other man descended the small stairway, Cooks observed Defendant confront Ford. Defendant demanded ten dollars that Ford owed him. Ford responded, "No, I owe you five dollars." Defendant then struck Ford with his fist and a melee ensued. A short distance away in her apartment, Chandler heard Ford exclaim, "Why are you doing this?"

About this time, Cooks observed Defendant pull out a gun, point it at Ford's stomach or chest area and begin shooting. As Chandler was "opening up [her] door to tell them to cool the noise down," she heard a gunshot. Through the open doorway, Chandler could observe "[Defendant] and Ford wrestling around," but as Cooks fled upstairs to Chandler's apartment, he blocked her view of the shooter.

Despite not wanting company moments earlier, Chandler let Cooks in, and he proceeded to the kitchen window and observed Defendant still shooting Ford. Both Cooks and Chandler saw Defendant and the other man leave the scene in a small silver or gray automobile as Ford lay face down in front of the apartment.

Chandler phoned 911 and hung up.[1] The dispatcher called her back. Chandler told the dispatcher there had been a shooting. Cooks eventually went downstairs and flagged down the police officer. A blue bandanna similar to Defendant's was

---

1. Chandler testified that she was initially afraid and scared and did not want to get involved. (R. at 472, 477.)

found at the scene with a cartridge casing underneath it.

The State charged Defendant with Murder,[2] and Carrying a Handgun Without a License,[3] a Class C felony. On December 3, 1997, a jury found Defendant guilty as to both counts. The trial court imposed a sentence of 65 years for murder and eight years for carrying a handgun without a license. Defendant appeals both convictions.[4]

We will recite additional facts as needed.

*Discussion*

I

■ Defendant contends that the trial court committed reversible error by excluding a portion of defense witness Jerome Warren's testimony. During the trial, the following interchange took place in which Warren attempted to testify about a conversation that State witness Cooks had with an unidentified third party. Cooks allegedly stated that he only identified Defendant as the shooter to avoid potential prosecution for possessing drugs:

[Defense Counsel]

Q: What did you hear Mr. Crooks say?

[Warren]

A: When the other—when his friend, whoever he was, asked him what happened down there, he said he didn't know what happened. You know he said he was in the house. And uh, he said, oh, you was in the house? And said, but I heard—I heard that you supposed to been testifying or whatever. And uh, he said, yeah, I only done

2. Ind.Code § 35–42–1–1(1) (1993).

3. *Id.* §§ 35–47–2–1 and 35–47–2–23 (Supp. 1995). Defendant had a prior unrelated conviction for Carrying a Handgun Without a License. (R. at 164, 784.)

4. Defendant claims there was insufficient evidence to support either his murder or handgun conviction. His brief, however, is solely focused on his murder conviction. Defendant only makes general and sporadic references to his conviction for carrying a handgun with-

that just to keep me out of trouble because I had a pocket full of stones. [5] And uh,—

[Deputy Prosecutor]

MS. PITZER: Objection.

THE COURT: Okay. That is sustained.

MS. PITZER: I would move that that be stricken.

THE COURT: All right. The witness's narrative is stricken from the record. The jury is admonished to disregard that.

(R. at 712–13.)

If this were the end of Warren's testimony concerning what Cooks allegedly said, this Court would have no difficulty comprehending the issue as briefed both by Defendant and the State—that is, whether or not the trial court properly excluded this testimony. However, this colloquy was only the opening act in Warren's direct testimony and cross-examination, both of which were directed specifically at the issue of whether Cooks allegedly identified Defendant to avoid prosecution for possessing drugs. (R. at 708–24.) For example, the following exchange occurred, *without objection*, as defense counsel tried to resume her direct examination of Warren:

[Defense Counsel]

Q: What—

THE COURT: If you could try and avoid the narrative, Ms. Oakes.

MS. OAKES: I understand.

out a license, thus, we fail to discern any argument on this matter. We therefore deem this argument waived by his failure to present a cogent argument in compliance with the requirements of Ind. Appellate Rule 8.3(A)(7). *See Goliday v. State,* 526 N.E.2d 1174, 1175 (Ind.1988).

5. Defense counsel explains in his brief that the "terms stones, rocks and crack cocaine are synonymous." Br. of Defendant–Appellant at 17 n. 1 (citing *Jordan v. State,* 692 N.E.2d 481, 483 (Ind.Ct.App.1998)).

THE COURT: Do a more—I guess a more traditional Direct.

MS. OAKES: Well,—

[Direct Examination Resumed]

Q: You heard Mr. Crooks state that he had named [Defendant], or the person he named, to keep himself out of trouble. Is that right?

A: Yes. 'Cause he thought they was gonna put it on him.

Q: He did state that also.

A: Yes, he did.

(R. at 713.)

By *not objecting* to this testimony, the State had just allowed defense counsel to summarize and clearly restate Warren's just-previously-stricken and arguably incomprehensible testimony. If the jurors had any doubt about the content and purpose of Warren's testimony, defense counsel clarified those issues.

After examining the record, it is clear that the trial court merely sustained an objection to the narrative form of Warren's testimony and then instructed defense counsel to conduct "a more traditional Direct." [6] And as we have previously stated, the remainder of Warren's direct testimony (R. at 713–15) and the *entirety* of the State's cross examination (R. at 715–24) was solely devoted to the issue of developing (on direct) and discrediting (on cross) the events surrounding Cooks alleged conversation.[7] The Defendant suffered no prejudice because the evidence he claims was excluded was, in fact, not excluded.

## II

Defendant also contends that there was insufficient evidence to sustain his conviction because Cooks's and Chandler's testimony identifying him as the shooter and placing him at the scene prior to the shooting was "incredibly dubious." We disagree.

■■■ This proposition is sometimes referred to as the "incredible dubiosity rule." *White v. State,* 706 N.E.2d 1078, 1079 (Ind. 1999) (citing *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994)). "Under this rule, a court will impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Id.* (internal citations omitted). "When a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Id.* However, application of this rule "is limited to cases ... where a *sole* witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the [defendant's] guilt." *Id.* at 1079–80 (emphasis added). Therefore, Defendant's reliance on this rule is misplaced.

■■ In this case, there was *both* an eyewitness *and* a corroborating witness. Cooks testified that he witnessed Defendant approach Darryl Ford and state that Ford owed him ten dollars. Cooks also testified that an argument and fight ensued, resulting in Defendant shooting Ford at least four times. Ford died as a result of this gunfire.

Cooks's testimony identifying Defendant as the killer was corroborated by Chan-

---

6. The State realizes that "the trial court may have excluded Warren's testimony because it was in a 'narrative' form," and then concedes that "Defendant could have tried to get Warren's testimony in with narrower questions." *See* Br. of Appellee at 7. We direct the State to pages 713 through 724 in the record where both it and defense counsel managed "to get Warren's testimony in with narrower questions."

7. The State even went so far in its final question on cross-examination to indirectly implicate its only other witness:

[Deputy Prosecutor]
Q: And, let me ask you if you heard this. Did you ever hear Rosezina Chandler say that she put this on the defendant, Davis Newson, so she wouldn't get in trouble?
A: No, I didn't.
(R. at 724.)

dler. Chandler testified that before the shooting, Defendant had stopped. by her apartment but left after he was told that she wanted no visitors. Soon thereafter, Chandler saw Defendant and Ford arguing and fighting. Chandler then heard gunshots and observed Ford lying face down on the ground with Defendant driving away.

After considering all the evidence most favorable to the verdict as well as drawing all reasonable inferences therefrom, we find the jury could have reasonably concluded that Defendant killed Ford.

### Conclusion

We affirm the judgment of the trial court as to both counts.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.